## LASHAUN FOSTER ET AL. *v.* HARVEY SMITH
## (AC 24848)

Bishop, DiPentima and Foti, Js.

---

Argued June 6—officially released September 20, 2005

*Terrence M. Wynne*, guardian ad litem, for the appellant (minor child).

*Thomas P. Crean*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Helene Opocensky*, assistant attorney general, for the appellee (state).

*Opinion*

BISHOP, J. This case involves an appeal to this court from the trial court's denial of an appeal from a decision of the family support magistrate. On appeal, the plaintiff minor child, Qaavon Foster,[1] claims that the court should have granted his appeal from the magistrate's decision because the magistrate improperly (1) converted the motion to modify child support, which the defendant, Harvey Smith, filed on July 10, 2000, to a motion to open, and (2) dismissed the paternity petition and voided the determination of paternity, ab initio, by concluding that the court lacked jurisdiction over the defendant at the time the petition was filed in 2000.[2] We reverse the judgment of the trial court.

The following facts and protracted procedural history are pertinent to our consideration of the child's appeal. On September 15, 2000, an assistant attorney general filed the underlying paternity petition on behalf of the

[1] The named plaintiff, Lashaun Foster, and the defendant, Harvey Smith, are not parties to this appeal.

[2] The minor child also claims that the family support magistrate improperly acted on the defendant's second motion to modify child support and improperly opened the October 22, 2002 decision because the defendant did not move to open or to set aside that decision and did not appeal from that decision within fourteen days. Due to the orders we issue herein, we do not address those claims.

state, pursuant to General Statutes § 46b-162, seeking support for the minor child of the plaintiff mother, Lashaun Foster. The minor child was born on April 26, 1997. The assistant attorney general brought the action because the mother and child had received state assistance. Service of the paternity action on the putative father, the defendant, was made by leaving the paternity petition, summons and order for hearing at his alleged usual place of abode in Stratford. The defendant did not appear at a hearing on the paternity petition on October 17, 2000, and the family support magistrate, *Sandra Sosnoff Baird,* issued, by default, a determination of paternity on November 28, 2000. Additionally, the magistrate ordered the defendant to pay child support in the amount of $63 per week. The magistrate also found an arrearage of $7938 payable to the plaintiff mother and an arrearage of $2457 payable to the state.

On July 10, 2001, the defendant filed a motion for modification of the child support order on the ground that he did "not know about this case and [that] the [kid] is mine." On August 15, 2001, the assistant attorney general filed an appearance on behalf of the state and, on September 7, 2001, the assistant attorney general and the defendant entered into an agreement to convert the motion to modify to a motion to open. On January 29, 2002, the defendant filed a pro se appearance. The hearing on the motion to open took place on March 5, 2002, during which the guardian ad litem for the minor child made a motion requesting the court to order genetic testing. Magistrate Sosnoff Baird opened the judgment of paternity on the basis of a lack of personal jurisdiction over the defendant, granted the minor child's motion for genetic testing and continued the matter to June 4, 2002. The matter ultimately was continued to October 22, 2002. In advance of the October, 2002 hearing, the defendant participated in genetic testing that confirmed, by a 99.97 percent probability, that

he is the father of the minor child. On October 22, 2002, the family support magistrate, *William E. Strada, Jr.*, issued a determination of paternity and entered financial orders against the defendant. The defendant did not appeal from those orders to the trial court.

On January 3, 2003, the defendant filed a second motion for modification, apparently claiming that he could not pay the child support because he was not working. On April 4, 2003, the family support magistrate, *Linda T. Wihbey*, reexamined the child support orders and ordered the state to recalculate the arrearage. On April 10, 2003, the minor child requested the family support magistrate to reconsider Magistrate Wihbey's April 4, 2003 order. Magistrate Wihbey, on September 19, 2003, dismissed the paternity petition and voided the determination of paternity, ab initio, concluding that the court had lacked jurisdiction over the defendant at the time the paternity petition was filed in 2000. On November 7, 2003, the court denied the minor child's appeal from Magistrate Wihbey's decision. The minor child appeals from the judgment of the trial court.

I

The minor child first claims that the court improperly denied his appeal because the family support magistrate improperly converted the defendant's motion to modify, filed on July 10, 2000, to a motion to open the decision determining paternity. The minor child asserts that because he and his mother were not served properly with notice of that motion and were not parties to the stipulation,[3] the family support magistrate improperly considered the motion to modify as a motion to open. That claim, however, is not properly before us because there was no timely appeal from the March 5, 2002

[3] On September 7, 2001, the assistant attorney general and the defendant entered into a written stipulation in which they agreed that the defendant's motion for modification would be converted into a motion to open.

decision opening the default determination of paternity or from the subsequent October 22, 2002 determination of paternity. The present appeal stems from the court's denial of the appeal from the family support magistrate's September 19, 2003 decision voiding the determination of paternity on the ground of a lack of personal jurisdiction. Accordingly, we will not review claims arising from the March 5 or October 22, 2002 decisions.

## II

The minor child next claims that the court improperly affirmed the family support magistrate's voiding of the determination of paternity as well as the attendant financial orders on the ground of a lack of personal jurisdiction. The minor child asserts that the family support magistrate had no authority to void the determination of paternity because the defendant submitted himself to the jurisdiction of the court. We agree.

Before considering the merits of that claim, we must first determine whether the minor child has standing to bring his appeal. "The issue of standing implicates the court's subject matter jurisdiction." (Internal quotation marks omitted.) *Ragin* v. *Lee*, 78 Conn. App. 848, 859, 829 A.2d 93 (2003). "In order for a party to have standing to invoke the jurisdiction of the court, that party must be aggrieved. Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless [one] has, in an individual or representative capacity, some real interest in the cause of action. . . . Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. . . . The fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from

a general interest, such as is the concern of all the members of the community as a whole. Second, the party claiming aggrievement must successfully establish that the specific personal and legal interest has been specially and injuriously affected by the decision." (Internal quotation marks omitted.) *In re Shawn S.*, 262 Conn. 155, 164–65, 810 A.2d 799 (2002).

Connecticut appellate courts have decided that a minor child who is the subject of a paternity action has a fundamental interest in an accurate determination of paternity. See *Lavertue* v. *Niman*, 196 Conn. 403, 409, 493 A.2d 213 (1985); *Ragin* v. *Lee*, supra, 78 Conn. App. 861. The United States Supreme Court has also acknowledged that "both the child and the defendant in a paternity action have a compelling interest in the accuracy of such a determination." *Little* v. *Streater*, 452 U.S. 1, 13, 101 S. Ct. 2202, 68 L. Ed. 2d 627 (1981). In *Ragin* v. *Lee*, supra, 864, this court determined that a minor child had standing to bring a motion to open a default judgment of paternity on the basis of the child's independent right to an accurate determination of paternity in that proceeding. In reaching that decision, this court took into account the fact that "Connecticut has long recognized that children have a separate and independent interest in family relations matters . . . [and that] . . . [o]ur Supreme Court has recognized that both the father and the child in a paternity proceeding have an interest in seeing that their rights to companionship, care and custody are accurately adjudicated." (Citations omitted.) Id., 861. Furthermore, our Supreme Court has considered the child's interests in that regard to be especially strong. *Lavertue* v. *Niman*, supra, 409. "Any determination that a particular individual is a child's biological father may have profound sociological and psychological ramifications. . . . It is in the child's interest not only to have it adjudicated that *some* man is his or her father and thus liable for support, but to

have some assurance that the correct person has been so identified." (Emphasis in original; internal quotation marks omitted.) Id.

In the present matter, the family support magistrate voided the September 19, 2003 determination of paternity that was based on genetic testing[4] confirming that the defendant was 99.97 percent likely to be the minor child's father. The family support magistrate's decision voiding the reliable determination of paternity is at the center of the minor child's appeal. Accordingly, the child has a fundamental interest in his appeal because he is entitled to an assurance that the correct person is identified as his father.[5] Furthermore, the minor child's specific personal and legal interest in having an accurate adjudication of paternity has been affected specially and injuriously by the decision of the court because the court, in effect, sustained the family support magistrate's decision that voided the reliable determination of paternity, leaving the issue of paternity undetermined. We conclude, therefore, that the minor child has standing to pursue that claim.

We now turn to the merits of the minor child's claim. He claims that the court improperly denied his appeal

[4] Our Supreme Court has recognized that such scientific techniques have the ability to identify the father of a child whose paternity is disputed to a high degree of certainty. See *Weidenbacher* v. *Duclos*, 234 Conn. 51, 71, 661 A.2d 988 (1995).

[5] We note, too, that the legal obligation of support for minor children runs directly to the children as well as to the custodial parent. *In re Bruce R.*, 234 Conn. 194, 209–10, 662 A.2d 107 (1995). Our Supreme Court has stated that "ordinarily, minor children will qualify as aggrieved by a trial court order that significantly diminishes or . . . eliminates the amount of support payable for their benefit by the noncustodial parent to the custodial parent." (Internal quotation marks omitted.) *Newman* v. *Newman*, 235 Conn. 82, 103, 663 A.2d 980 (1995). Because the parent's support obligation runs directly to the minor child and because the elimination of support payments payable to the minor child likely would mean a reduction in the total amount of money available to provide for his needs, the minor child also was aggrieved by the dismissal of the judgment of paternity because that dismissal entailed the elimination of the attendant child support orders.

from the September 16, 2003 decision of the family support magistrate dismissing the paternity petition and voiding the determination of paternity on the ground of insufficiency of service of process on the defendant and lack of personal jurisdiction. The minor child asserts that the family support magistrate improperly concluded that the court did not have personal jurisdiction over the defendant and, therefore, improperly dismissed the paternity petition. We agree.

"A challenge to the jurisdiction of the court presents a question of law. . . . Our review of the court's legal conclusion is, therefore, plenary." (Internal quotation marks omitted.) *Bove* v. *Bove*, 77 Conn. App. 355, 361, 823 A.2d 383 (2003). "[T]he Superior Court . . . may exercise jurisdiction over a person only if that person has been properly served with process, has consented to the jurisdiction of the court or has waived any objection to the court's exercise of personal jurisdiction." (Internal quotation marks omitted.) Id., 362. Accordingly, jurisdiction over a person can be obtained by waiver. *Connor* v. *Statewide Grievance Committee*, 260 Conn. 435, 445, 797 A.2d 1081 (2002). Unlike the situation with subject matter jurisdiction, a party waives the right to dispute personal jurisdiction unless that party files a motion to dismiss within thirty days of the filing of an appearance. *Lostritto* v. *Community Action Agency of New Haven, Inc.*, 269 Conn. 10, 32, 848 A.2d 418 (2004); see also Practice Book §§ 10-30, 10-32.[6] Personal jurisdiction is not like subject matter jurisdiction, which can be raised at any time and by the court on its own motion. *Lostritto* v. *Community Action Agency of New Haven, Inc.*, supra, 32. Unless the issue of per-

---

[6] Practice Book § 10-30 provides in relevant part: "Any defendant, wishing to contest the court's jurisdiction . . . must do so by filing a motion to dismiss within thirty days of the filing of an appearance. . . ."

Practice Book § 10-32 provides in relevant part: "Any claim of lack of jurisdiction over the person . . . is waived if not raised by a motion to dismiss . . . ."

sonal jurisdiction is raised by a timely motion to dismiss, any challenge to the court's personal jurisdiction over the defendant is lost. Id.

In this case, the defendant waived any right to challenge the court's exercise of personal jurisdiction over him. The defendant first consented to the jurisdiction of the court when he filed an appearance on January 29, 2002, and then failed to file a motion to dismiss for lack of personal jurisdiction within thirty days of filing his appearance pursuant to Practice Book § 10-30. "The rule [of practice] specifically and unambiguously provides that any claim of lack of jurisdiction over the *person* as a result of an insufficiency of service of process *is waived* unless it is raised by a motion to dismiss filed within thirty days in the sequence required by Practice Book § 10-6 . . . . Thus, thirty-one days after the filing of an appearance or the failure to adhere to the requisite sequence, a party is deemed to have submitted to the jurisdiction of the court. Any claim of insufficiency of process is waived if not sooner raised." (Emphasis in original.) *Pitchell* v. *Hartford*, 247 Conn. 422, 433, 722 A.2d 797 (1999). Because the defendant did not file a motion to dismiss on the basis of lack of personal jurisdiction within thirty days after he filed an appearance, the court properly obtained personal jurisdiction over him.

Furthermore, the defendant's course of conduct reinforces our conclusion that he submitted to the jurisdiction of the court. On July 10, 2001, the defendant filed a motion to modify and, on September 7, 2001, entered into an agreement to convert his motion to modify to a motion to open the determination of paternity issued upon the defendant's default. On March 5, 2002, more than thirty days after the defendant had filed an appearance, he participated in and presented evidence at a hearing held on the motion to open. The defendant subsequently participated in genetic testing to deter-

mine whether he was the father of the minor child. On October 22, 2002, the magistrate issued its decision determining paternity and entered financial orders from which the defendant did not appeal. The defendant filed a second motion to modify on January 3, 2003, claiming that he was not working. By the time Magistrate Wihbey, sua sponte, voided the determination of paternity and dismissed the underlying paternity petition when the second motion to modify was before the court, the defendant already had submitted himself to the jurisdiction of the court and thereby waived any right to contest the court's exercise of personal jurisdiction over him. Because personal jurisdiction is not like subject matter jurisdiction and cannot be raised at any time or by the court on its own motion, the family support magistrate improperly concluded that the court did not have personal jurisdiction over the defendant. Accordingly, the family support magistrate improperly voided the determination of paternity and dismissed the underlying paternity petition.

The judgment is reversed and the case is remanded with direction to remand the matter to the family support magistrate with direction to reinstate the determination of paternity and the existing child support orders and for further proceedings, upon appropriate notice to all parties, on the defendant's motion to modify child support.

In this opinion the other judges concurred.